IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

**AXA INSURANCE COMPANY,**
a/s/o **KOCKS KRANE GMBH,**

    **Plaintiff,**

v.

                                        **Case No.:**

**FAGIOLI, INC.,**

    **Defendant.**

## COMPLAINT

NOW COMES the Plaintiff, AXA INSURANCE COMPANY a/s/o KOCKS KRANE GMBH., by and through counsel, and for its Complaint against Defendant, Fagioli, Inc., hereby alleges the following:

## PARTIES

1. At all relevant times, Plaintiff AXA INSURANCE COMPANY a/s/o KOCKS KRANE GMBH ("Plaintiff"), was and is a foreign corporation, organized and existing under the laws of the State of Delaware, with Principal place of business located at 125 Broad Street, Fifth Floor, New York, New York 10004.

2. At all relevant times, KOCKS KRANE GMBH ("Insured"), was and is a foreign corporation, organized and existing under the laws of the State of Delaware, with a principal executive office located in Bremen, Germany.

3. At all relevant times, Plaintiff issued a policy of Insurance to Insured, bearing Policy Number AIM003247(18) ("Policy).

7411034.2

4. At all relevant times, upon information and belief, Defendant FAGIOLI, INC. was and is a business with a principal office located at 21310 Highway 6, Marvel, Texas 77578.

## JURISDICTION AND VENUE

5. Jurisdiction is proper pursuant to 28 U.S.C. § 1332, as Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds the statutory limit.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as well as the parties' contractual agreement.

## FACTUAL ALLEGATIONS

7. At all relevant times, Plaintiff's subrogor KOCKS KRANE GMBH ("Insured"), was hired by Newport News Shipbuilding to design, manufacture, deliver, install, erect and commission a 315 metric ton Goliath Gantry Crane ("Goliath") at the Newport News Ship Building and Dry-dock, 50th Street Drydock, Hampton, VA 23661 (the "Premises").

8. On or about April 5, 2017, Insured entered into a Contract with Defendant for Defendant to act as subcontractor for the Goliath crane project.

9. A Goliath gantry crane is a crane built atop a structure that straddles the workspace and is capable of lifting extremely heavy loads. The structure sits on rails, often referred to as crawlers, and is comprised of two sets of vertical beams, which in turn hold up the main overhead crane mechanisms. The overhead crane mechanisms are comprised of a single overhead beam, or two parallel beams, on which sits the crane assembly. These overhead beams can terminate at the vertical support beams or have cantilevered sections to allow for more lifting capacity. Construction of such a massive machine requires the use of various other cranes as well as jack systems referred to as the strand jack system.

7411034.2

10. Under the Contract, Defendant was responsible for the completion of engineering and design work as required for the lifting plans, crawler crane loadings and strand jack systems as well as the safe installation and erection of the Goliath crane. Defendant was to also supply any equipment necessary to undertake the project.

11. The subject crane was designed to have twin overhead beams, all four ends of which were cantilevered.

12. On or about July 12, 2018, Defendant, its agents, servants and/or employees were installing the third cantilever beam on the Goliath crane.

13. Shortly after installing the third cantilever beam, the west side BT8, a spindle used to support the overhead beam, moved down by approx. 3inches and lifted partly out of the Neopot bearing between shearleg on the overhead beam and BT8, causing extensive damage.

14. The installation of the third cantilever by Defendant was carried out during a lunch break and against the instructions of Insured.

15. The damage was the result of negligent installation, inspection and/or supervision by Defendant, its agents, servants and/or employees, specifically the erection sequence chosen by Defendant caused a load eccentricity by placing the four cantilevers one after the other on top of BT8. This resulted in a movement of the rotation lock when placing cantilever number 3 on the west side, which in turn caused the damage to the crane.

16. As a result of the damage, Insured sustained damage to its business, real and/or personal property.

17. In accordance with its policy, Insured submitted an insurance claim to Plaintiff for damages suffered by the Insured, which were covered under the policy.

7411034.2

18. Plaintiff made payment to Insured in the amount of two hundred ten thousand, nine hundred seventeen dollars and fifty-five cents ($210,917.55) and is subrogated to Insured's rights of recovery.

19. The damages and losses incurred by Insured, and Plaintiff by way of subrogation, were caused solely by Defendant's conduct, actions and/or inactions outlined herein.

20. Insured, and Plaintiff by way of subrogation, suffered real and/or personal property damage, interruption of its business, and/or incurred losses and expenses, in an amount in excess of TWO HUNDRED TEN THOUSAND, NINE HUNDRED SEVENTEEN DOLLARS and FIFTY-FIVE CENTS ($210,917.55).

## COUNT I
## NEGLIGENCE

21. Plaintiff repeats each and every allegation contained in those paragraphs of the Complaint marked and numbered "1" through "20", inclusive, with the same force and effect as though fully and at length set forth herein.

22. Defendant, its agents, servants and/or employees, had a duty to exercise reasonable care in performing the work at the Premises so as to insure that the work on the Premises was performed properly, and did not pose an unreasonable risk of harm or damage to persons and property.

23. Defendant, its agents, servants and/or employees, had a duty to exercise reasonable care to insure that the Goliath crane, including the third cantilever, was properly installed, located, inspected and/or tested, as to prevent and avoid the possibility of damage.

24. Defendant, its agents, servants and/or employees, acted with negligence, carelessness and recklessness as follows:

    a. Failing to exercise due and reasonable care in installing the third cantilever;

7411034.2

    b. Failing to exercise due and reasonable care designing the erection sequence;

    c. Failing to monitor guy wires during the erection sequence;

    d. Failing to adhere to the instructions of Plaintiff in regards to the erection of the Goliath crane;

    e. Failing to use due care to insure its activities did not damage the Premises;

    f. Failing to perform and/or supervise its activities and/or work at the Premises;

    g. Hiring incompetent employees, agents, servants, representatives, contractors and/or subcontractors to perform work at the Premises;

    h. Failing to take proper precautions to insure that its work at the Premises would not damage, destroy or otherwise impact the Premises;

    i. Failing to comply with all applicable laws, rules, codes, standards and/or regulations pertaining to its activities at the Premises;

    j. Failing to perform its work in a reasonable and prudent manner, which lead to the damage of the Goliath crane;

    k. Failing to perform the installation in a reasonable and prudent manner, which failure led to the damage of the Goliath crane; and/or

    l. Such other acts of negligence and/or improper conduct which discovery may reveal.

25. The aforementioned damages to the Premises were the direct and proximate result of the aforementioned negligence, carelessness and/or recklessness of Defendant, its agents, servants and/or employees, and were the direct and proximate result of negligence *per se*, carelessness, recklessness and/or negligent acts and/or omissions of Defendant, its agents, servants and/or employees.

7411034.2

26. The damages suffered by Insured, and Plaintiff by way of subrogation, do not ordinarily occur in the absence of someone's negligence.

27. The damages suffered by Insured, and Plaintiff by way of subrogation, were not due to any voluntary action, inaction and/or contribution on the part of Insured, and Plaintiff by way of subrogation.

28. Defendant was in the exclusive care, custody and/or control of the instrumentality causing Insured, and Plaintiff by way of subrogation, damages.

29. Plaintiff will also rely upon the doctrine of *res ipsa loquitur*.

30. As a direct and proximate result of the aforesaid acts of negligence, negligence *per se*, carelessness, recklessness and/or negligent acts and/or omissions of Defendant, its agents, servants and/or employees, the subject incident occurred and caused Insured, and Plaintiff by way of subrogation, to sustain severe and substantial damages in an amount in excess of TWO HUNDRED TEN THOUSAND, NINE HUNDRED SEVENTEEN DOLLARS and FIFTY-FIVE CENTS ($210,917.55) exclusive of interest and costs of this action.

## COUNT II
## GROSS NEGLIGENCE, RECKLESSNESS, AND WILLFUL AND WANTON MISCONDUCT

31. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "30" with the same force and effect as though fully set forth herein.

32. At all relevant times, Defendant was responsible for designing, installing, inspecting and/or protecting the Goliath crane at the Premises, including, but not limited to, the installation of the third cantilever, and owed a duty to Insured, and Plaintiff by way of subrogation, to engage in said activities in a reasonable and workmanlike manner.

7411034.2

33. At all relevant times, Defendant was responsible for assuring that the Goliath crane at the Premises had sufficient and proper protections, and was adequately and properly installed, inspected and/or tested, and owed a duty to Plaintiff to engage in said activities, in a reasonable and workmanlike manner.

34. At all relevant times, Defendant was to carry out the installation of the Goliath Crane in accordance to the instructions of Insured and explicitly failed to do so.

35. By holding itself out as an expert in the industry, Defendant knew or should have known how to properly maintain, service, repair, replace, protect, move, install, inspect, test and/or otherwise prevent damage to the Goliath crane at the Premises.

36. By holding itself out as an expert in the industry, Defendant knew or should have known that its failure to maintain, service, repair, replace, protect, move, install, inspect, test and/or otherwise prevent the proper installation of the third cantilever could result in the loss of life, limb and/or property, and could result in a high degree of danger being present.

37. By holding itself out as an expert in the industry, Defendant knew or should have known it was required to conduct itself with a high degree of caution to avoid the apparent danger posed by the failures alleged herein.

38. Defendant's above noted failures were performed in complete disregard for the rights and safety of Insured and its property, and the consequences thereof.

39. Defendant's above outlined conduct and failures evidence a complete indifference to its duties as outlined above, including the duty to avoid damaging the property and business of Insured, such that Defendant's actions amount to reckless indifference.

40. Despite all the knowledge held by Defendant, it intentionally, willfully, wantonly, grossly and/or recklessly failed to take the necessary actions and steps as outlined herein, and acted outside the bounds of reason and reasonableness.

41. Defendant's failures as outlined above were of a highly unreasonable conduct, an extreme departure from ordinary care, willful, wanton, grossly negligent and/or reckless and performed with reckless indifferences to the health and well-being of Insured, and Plaintiff by way of subrogation, and general public.

42. Defendant's failure to abide by the required conduct and duties owed to Insured, and Plaintiff by way of subrogation, outlined above, were in and of themselves an extreme departure from ordinary care.

43. Defendant's actions and/or omissions outlined above evidence a conscious indifference and disregard to the consequences under circumstances where the probability of harm to Insured or its property was or should have been readily apparent to Defendant.

44. Defendant did not act out of mere mistake resulting from inexperience, excitement, confusion, thoughtlessness, inadvertence and/or simple inattention.

45. The damages suffered by Insured, and Plaintiff by way of subrogation, were caused by Defendant engaging in grossly negligent, careless, reckless, and/or willful and wanton misconduct, by failing to take the necessary actions and conduct as outlined above.

46. As a direct and proximate result of Defendant's willful, wanton, grossly negligent and/or reckless conduct, Insured, and Plaintiff by way of subrogation, was caused to sustain severe and substantial damages in an amount in excess of TWO HUNDRED TEN THOUSAND, NINE HUNDRED SEVENTEEN DOLLARS and FIFTY-FIVE CENTS ($210,917.55) exclusive of interest and costs of this action.

## COUNT III
## BREACH OF EXPRESS AND IMPLIED WARRANTIES

47. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "46" with the same force and effect as though fully set forth herein.

48. Defendant made express and implied warranties to Insured concerning Defendant's design, manufacture, testing, inspection, supplying, marketing, distribution, servicing and/or installation of the Goliath crane, and in the supervision, retention, management and/or performance of activities related to same.

49. Defendant's representations, warranties and guarantees were part of the basis for Insured entering into an agreement(s) with Defendant for Insured's benefit.

50. Defendant breached its express and implied warranties, by failing to: perform all tasks required of it pursuant to the pertinent contract(s), and any applicable codes, rules and/or regulations; satisfy all appropriate industry standards and guidelines; and in general acting in so negligent, careless and/or reckless manner so as to evince a complete disregard for the safety of the property of others, including, but not limited to, Insured's property.

51. Defendant breached its express and implied warranties when it negligently, carelessly and/or recklessly designed, manufactured, tested, inspected, supplied, marketed, distributed, serviced and/or installed the Goliath crane, and failed to supervise same.

52. To the extent said express and/or implied warranties were not directly with Insured, they were for Insured's benefit and Insured, and Plaintiff by way of subrogation, is the intended third-party beneficiary thereof.

53. As a direct and foreseeable result of Defendant's breach of its warranties, Insured, and Plaintiff by way of subrogation, was caused to sustain severe and substantial damages in an

7411034.2

amount in excess of TWO HUNDRED TEN THOUSAND, NINE HUNDRED SEVENTEEN DOLLARS and FIFTY-FIVE CENTS ($210,917.55) exclusive of interest and costs of this action.

## COUNT IV
## BREACH OF CONTRACT

54. Plaintiff repeats each and every allegation contained in those paragraphs of the Complaint numbered "1" through "53," inclusive, with the same force and effect as though fully and at length set forth herein.

55. Upon information and belief, Insured entered into a written agreement with Defendant, whereby Defendant was responsible for the completion of engineering and design work as required for the lifting plans, crawler crane loadings and strand jack systems as well as the safe installation and erection of the Goliath crane

56. Upon information and belief, expressed and/or implied in the Contract were provisions that Defendant would perform all work in a reasonable, safe, prudent and workmanlike manner, in compliance with all applicable industry standards and practices, and further would use properly trained personnel, and would otherwise exercise due care in performance of the Contract.

57. Upon information and belief, Defendant breached its contractual duties and/or breached the implied duties in the Contract by failing to perform all work in a reasonable, safe, prudent and workmanlike manner, in compliance with all industry standards and practices, and further failing to use properly trained personnel, and further otherwise failing to exercise due care in performance of the Contract.

58. Defendant's breach of the Contract included, but was not limited to, breach of the agreement to remain liable for all losses caused by the negligent acts or omissions of Defendant's

7411034.2

employees, to perform its work under the guidance and instruction of Insured, and breach of the agreement to provide work, materials and equipment free from defects.

59. As a direct and foreseeable result of Defendant's breach of the Contract and/or breach of the implied terms and conditions of the Contract, Insured, and Plaintiff by way of subrogation, sustained damages in the amount of TWO HUNDRED TEN THOUSAND, NINE HUNDRED SEVENTEEN DOLLARS and FIFTY-FIVE CENTS ($210,917.55), exclusive of interest and costs of this action.

**WHEREFORE**, Plaintiff demands judgment against Defendant for the total amount of Plaintiff's damages, TWO HUNDRED TEN THOUSAND, NINE HUNDRED SEVENTEEN DOLLARS and FIFTY-FIVE CENTS ($210,917.55) together with interest, legal fees, costs and such other relief as the Court deems proper.

BY: AXA Insurance Company a/s/o Cocks Crane GMBH

_____
Of Counsel

Ameet I. Habib, Esq. (VSB #74096)
Adam M. Carroll, Esq. (VSB #68017)
WOLCOTT RIVERS GATES
Convergence Center V
200 Bendix Road, Suite 300
Virginia Beach, Virginia 23452
Telephone: (757) 497-6633
Facsimile: (757) 554-0228
Email: ahabib@wolriv.com
       acarroll@wolriv.com
*Local Counsel for Kocks Krane, GMBH*

7411034.2

Robert A. Stern, Esquire (not admitted in Virginia)
Elizabeth Zakheim, Esquire (not admitted in Virginia)
CLAUSEN MILLER, P.C.
28 Liberty Street, 39th Floor
New York, New York 10005
Phone (212)805-3900
Email: RSTERN@clausen.com
Email: ezakheim@clausen.com

*Counsel for Kocks Krane, GMBH*
*Pro hac vice application to be submitted*

7411034.2